1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROSE SETU,                                No.  2:15-cv-597-EFB

12                  Plaintiff,

13          v.                                  ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
15
                    Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her applications for a period of disability and Disability Insurance

20   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

21   Social Security Act.  The parties have filed cross-motions for summary judgment.  For the

22   reasons discussed below, plaintiff's motion for summary judgment is granted, the

23   Commissioner's motion is denied, and the matter is remanded for further proceedings.

24   I.     BACKGROUND

25          Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had

26   been disabled since September 15, 2009.  Administrative Record ("AR") 228-240.  Plaintiff's

27   applications were denied initially and upon reconsideration.  Id. at 122-126, 130-134.  On

28   February 9, 2011, a hearing was held before administrative law judge ("ALJ") Timothy S.

Snelling. *Id.* at 29-61.  Plaintiff was represented by counsel at the hearing, at which she and her daughter testified. *Id.*

On April 18, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. *Id.* at 102-111.  The Appeals Council subsequently granted plaintiff's request for review, vacated the ALJ's decision, and remanded the matter to the ALJ for further consideration of plaintiff's mental impairments and to obtain evidence from a vocational expert. *Id.* at 118-120.

Another hearing was held before the ALJ on June 6, 2013, at which plaintiff and a vocational expert testified. *Id.* at 62-91.  The ALJ issued a new decision on July 26, 2013, again finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the1 Act.[1] *Id.* at 11-21.  The ALJ made the following specific findings:

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

2

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2.  The claimant has not engaged in substantial gainful activity since September 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following medically severe combination of impairments: diabetes mellitus with history of retinopathy; loss of left eye vision; retinal detachment and neuropathy; major depression with psychotic features; bipolar disorder; hypertension; exogenous obesity; gastro-esophageal reflux disorder; mood disorder, not otherwise specified; borderline personality disorder; and psychotic disorder (20 CFR 404.1520(c) and 416.920(c)).

    * * *

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

    * * *

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), but she cannot perform work requiring good binocular vision, good depth perception or field of vision because of blindness in the left eye; the claimant is restricted to no more than occasional stooping and twisting and would need to avoid more than moderate exposure (no more than 50% of the work day) to hazards, unprotected heights, unprotected dangerous moving machinery etc.  The claimant can have no more than occasional face-to-face interaction with the general public and the claimant is more than frequently but less than constantly able to understand, remember and carry out complex and detailed job instructions.

    * * *

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    * * *

7.  The claimant was born on August 6, 2962 and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 13-22.

Plaintiff's request for Appeals Council review was denied on January 26, 2015, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-6.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

/////

4

1    "The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

3    2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

4    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

6    III.    ANALYSIS

7            Plaintiff argues that the ALJ erred by (1) rejecting opinions from plaintiff's treating,

8    examining, and non-examining physicians and (2) discrediting her testimony without providing

9    clear and convincing reasons.  ECF No. 13-1 at 14-22.

10           Plaintiff first argues that the ALJ erred in rejecting opinions from three different

11   physicians assessing her mental limitations.  *Id*. at 14-20.  The weight given to medical opinions

12   depends in part on whether they are proffered by treating, examining, or non-examining

13   professionals.  *Lester*, 81 F.3d at 834.  Ordinarily, more weight is given to the opinion of a

14   treating professional, who has a greater opportunity to know and observe the patient as an

15   individual.  *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an

16   ALJ properly rejected a medical opinion, in addition to considering its source, the court considers

17   whether (1) contradictory opinions are in the record; and (2) clinical findings support the

18   opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical

19   professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a

20   contradicted opinion of a treating or examining medical professional may be rejected for "specific

21   and legitimate" reasons that are supported by substantial evidence.  *Id*. at 830.  While a treating

22   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

23   examining professional's opinion (e.g., supported by different independent clinical findings), the

24   ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

25   *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining

26   physician relies on the same clinical findings as a treating physician, but differs only in his or her

27   conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v.

28   Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

1    Plaintiff's treating physician, Dr. John O'Neal, completed a medical opinion form

2    regarding plaintiff's mental impairments.  AR 523-526.  Dr. O'Neal had been treating plaintiff

3    every three months over a one and a half year period.  *Id.* at 523.  He diagnosed plaintiff with

4    mood disorder and a psychotic disorder and indicated that her symptoms included depressed

5    mood, suicidal thoughts, insomnia, irritability, lack of energy, impaired concentration, frequent

6    mood swings, and impulsive behavior.  *Id.* at 523-525.  It was his opinion that plaintiff had a poor

7    to no ability to behave in an emotionally stable manner, relate predictably in social situations, and

8    demonstrate reliability.  *Id.* at 524.  He further opined that plaintiff would likely be absent from

9    work for more than four days a month due to her mental impairments, and that she is incapable of

10   performing even low stress jobs.  *Id.* at 526.

11   Plaintiff underwent a complete psychiatric evaluation, which was performed by Dr.

12   Bradley Daigle, M.D., an examining physician.  *Id.* at 420-425.  Dr. Daigle found that plaintiff

13   was alert, cooperative, and basically oriented, but poorly responsive with obvious depression and

14   limited eye contact.  *Id.* at 422-423.  Her affect was glum, humorless, sad, and virtually

15   expressionless with psychomotor retardation.  *Id.* at 423.  Dr. Daigle diagnosed plaintiff with

16   major depression with psychotic features, currently untreated.[2]  *Id.* at 424.  He opined that

17   plaintiff is moderately limited in following detailed and complex instructions, but only slightly

18   limited in understanding, remembering, and carrying out simple 1 or 2-step instructions;

19   moderately limited in relating and interaction with supervisors, co-workers, and the public;

20   moderately limited in maintaining concentration and attention, persistence and pace; and

21   moderately to markedly limited in her ability to associate with day-to-day work activity and in

22   adapting to stresses common to a normal work environment.  *Id.* at 425.

23   The record also contains an opinion from Dr. K. Loomis, a non-examining physician.  *Id.*

24   at 338-440.  Dr. Loomis opined that plaintiff is capable of understanding, remembering and

25   carryout one to two step tasks; maintaining concentration, persistence and pace throughout a

26   normal workday/workweeks as related to simple tasks; interacting adequately with coworkers and

27

28   [2]  Dr. Daigle provided his opinion in May 2010, prior to plaintiff receiving treatment from
     Dr. O'Neil.  AR 420, 523.

1    supervisors but may have difficulty dealing with the demands of contact with the general public.

2    *Id*. at 440.

3        In assessing plaintiff's RFC, the ALJ gave "reduced weight" to Dr. O'Neil's treating

4    opinion, "moderate weight" to Dr. Daigle's examining opinion, and "great weight" to Dr.

5    Loomis's non-examining opinions.  *Id*. at 18-19.

6        Plaintiff first argues that the ALJ erred by rejecting Dr. O'Neil's opinion without

7    providing specific and legitimate reasons.  ECF No. 13-1.  The ALJ gave reduced weight to Dr.

8    O'Neal's opinion because it was provided "in a form consisting largely of checked boxes without

9    further explanation," and it was inconsistent and contrasted by other evidence in the record,

10   including plaintiff's daily activities and her ability to walk with a normal gait.

11       An "ALJ need not accept the opinion of any physician, including a treating physician, if

12   that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v.*

13   *Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

14   1219, 1228 (9th Cir. 2009)).  Dr. O'Neal's opinion was obtained by way of a check-the-box form.

15   AR 523-526.  However, rather than simply check boxes, Dr. O'Neal explained that his opinion

16   was based on plaintiff's symptoms of depression and suicidal thoughts, as well as frequent mood

17   swings and impulsive behavior.  *Id*. at 524-525. Thus, notwithstanding the use of a check-the-box

18   form, Dr. O'Neal did identify the clinical findings that supported his opinion.

19       Moreover, the court finds that the ALJ's reliance on the brevity of Dr. O'Neal's opinion

20   was not a specific and legitimate reason in the instant case.  The ALJ rejected Dr. O'Neal's

21   treating opinion in favor of Dr. Loomis's opinion.  Dr. Loomis, however, also provided his

22   opinion in a check-the-box form.  But unlike Dr. O'Neal, Dr. Loomis did not provide any

23   explanation for his opinion.  To reject a treating opinion on the basis that it is conclusory and

24   unsupported in favor of a non-examining opinion that is, at the very least, equally conclusory is

25   not a legitimate reason for discounting the treating doctor's opinion.

26       The ALJ also concluded that Dr. O'Neal's "findings are inconsistent and contrast sharply

27   with the other evidence of record, rendering them less persuasive."  AR  19.  Specifically, the

28   ALJ concluded that Dr. O'Neal's opinion was inconsistent with evidence showing that plaintiff

1    walks with a normal gait, prepares her own meals, does dishes, cleaning, dusting, and vacuuming.

2    *Id*.  There no apparent inconsistency between Dr. O'Neal's opinion and the ability to perform

3    these activities.  The ability to walk with a normal gait has no relevance to Dr. O'Neal's opinion,

4    which was based on plaintiff's mental impairments.  *See id*. at 525 (opining that plaintiff could

5    perform less than sedentary work due to her "emotion stability.").  Furthermore, the ability to

6    perform light house work does not conflict with Dr. O'Neal's opinion that plaintiff's is severely

7    limited in her ability to behave in an emotionally stable manner, relate predictably in social

8    situations, and handle stress.  *Cf Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This

9    court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

10   activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any

11   way detract from her credibility as to her overall disability."); *Fair v. Bowen*, 885 F.2d 597, 603

12   (9th Cir. 1989) ("Social Security Act does not require that claimants be utterly incapacitated to be

13   eligible for benefits").  Accordingly, the ALJ failed to provide specific and legitimate reasons for

14   rejecting Dr. O'Neal's treating opinion.

15        Plaintiff further argues that the ALJ erred in rejecting Dr. Diagle's opinion that plaintiff is

16   slightly limited in her ability to understand, remember, and carry out simple 1 or 2-step job

17   instructions and moderately limited in following detailed and complex instructions.  ECF No. 13

18   at 18-19.  The ALJ rejected this portion of Dr. Daigle's opinion, finding that it was inconsistent

19   with evidence in the record showing that plaintiff maintained the ability to pay bills, count change

20   and use a checkbook or money orders.  AR 19.

21        The evidence cited by the ALJ does not establish plaintiff's ability to independently

22   manage her finances.  While plaintiff states that she can pay bills, count change, and use a

23   checkbook, she also states that she has difficulty managing her savings account.  *Id*. at 293.  She

24   explains that she doesn't always remember how much money is in her account and that she may

25   overdrafted the account.  *Id*. at 293.  She further states that she doesn't "really know what I have

26   unless its in front of me" or she receives assistance from her fiancé.  *Id*. at 294.

27        Thus, the record merely establishes that plaintiff has the ability to count money and write

28   a check.  The ability to perform these activities is not tantamount to the ability to more frequently

understand, remember and carry out complex and detailed job instructions.  Accordingly, the ALJ failed to give sufficient reasons for rejecting Dr. O'Neal's examining opinion.

As the ALJ erred in rejecting the opinions from both plaintiffs' treating and examining physicians, this matter must be remanded for further proceedings.[3]

IV.    CONCLUSION

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment is granted;

2.  The Commissioner's cross-motion for summary judgment is denied;

3.  The matter is remanded for further proceedings consistent with this order; and

4.  The Clerk is directed to enter judgment in plaintiff's favor.

DATED:  September 21, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[3]  Because the court finds that remand is necessary for further consideration of the medical evidence, the court declines to address plaintiff's additional arguments.

9